UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SABRINA BRAY, | ) | |
| | ) | Case No. 4:07-CV-0016 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE ANN ALDRICH |
| | ) | |
| PAT ANDREWS, | ) | |
| | ) | |
| Respondent. | ) | MEMORANDUM AND ORDER |
| | ) | |
| | ) | |

Before this court is Sabrina Bray's ("Bray") 28 U.S.C. § 2254 petition for habeas corpus, challenging the constitutionality of her February 4, 2004 conviction of complicity to commit murder, with a firearm specification, in state court. Bray was sentenced to fifteen years to life on the complicity charge and three years on the firearm specification, to be served consecutively.

Specifically, Bray claims that she was denied effective assistance of counsel, as guaranteed by the Sixth Amendment, by her attorney's failure to inform her that she could be found guilty of complicity to murder, even if she was not convicted of murder itself. Pat Andrews, the warden at the Ohio Reformatory for Women in Marysville, Ohio, ("Respondent") objects to Bray's petition for writ on the grounds that it is procedurally barred and without merit. For the following reasons, the court conditionally grants Bray's petition for habeas corpus.

**I.     FACTUAL BACKGROUND**

Bray was indicted for murder in violation of Ohio Revised Code 2903.02(A)(D), with a firearm specification.  Because she was only indicted of murder, Bray claims that her counsel naively assumed that she could not be convicted of any other crime, including complicity for murder.  Bray's counsel never requested a bill of particulars.  Based on this incorrect assumption, Bray rejected the state's plea offer and proceeded to a jury trial.  On February 2, 2004, the jury acquitted Bray of the murder charge, but convicted her of complicity to murder with a firearm specification.  She was sentenced to fifteen years to life imprisonment on the complicity charge and three years on the specification, to be served consecutively.

At the sentencing hearing, Bray's counsel admitted that he had committed an error.  He stated:

> I am obviously greatly disappointed not only at the fact that the jury returned a verdict of guilty as a complicitor, but more so I guess in my own professional – naivety is not the appropriate word, I believe.  I don't believe that I am a naive person. Nothing in this case prior to the beginning of this trial led me to believe that the State was going to try to seek a complicitor instruction at the time of the close of the case as an alternative to the principal.  Had I known or even suspected that that was going to be an option, I certainly would have advised Sabrina to seriously consider and even, in fact, take the proposed plea agreement of involuntary manslaughter which carried a 13 year maximum sentence.
>
> Without violating the attorney/client privilege, I can advise the court today that at the time that these discussions were had regarding the potential plea, I basically took a neutral position.  She had to that point steadfastly denied being the person who shot and, unfortunately, killed Allison Buckner.  She always admitted to her presence at the scene, but denied any further participation in any active plan to harm or shoot or kill Allison Buckner. So I took the position that this is entirely your call.  If we go to trial and win on murder, which I think the State is going to have a difficult time proving given the problems that the main witness carried when they came into the courtroom, you will walk away after spending two plus years in the county jail waiting to go to trial.  On the other hand, if you get convicted of that offense at trial, you are going to get 18 to life, which effectively translates to 25 or 30 years in prison at Marysville.  So based on my discussions with her, she elected to proceed towards

> trial on murder as the principal charge, which now in hindsight has the tragically pathetic effect of probably doubling her sentence. She would have probably received – she could have received no more than 13 years on an involuntary manslaughter. And now, as I said, she would probably do 25 years based on those series of events.

*State v. Bray*, 2005 Ohio 2117 at ¶35-6 (Ct. App. Ohio 2005).

Bray filed a timely appeal to the Seventh District Court of Appeals of Ohio and challenged her conviction. In a supporting motion, Bray raised two assignments of error. First, she argued that she was denied due process rights, as afforded by the Fourteenth Amendment, when the trial court instructed the jury on complicity without giving her proper notice. Second, she argued that she was denied effective assistance of counsel, as guaranteed by the Sixth Amendment, when her trial counsel failed to request a bill of particulars, which in turn would have clued counsel to the fact that the prosecution would be requesting a jury instruction on complicity. On April 24, 2005, the court of appeals dismissed Bray's claims and affirmed her conviction.

In its opinion, the court of appeals stated *sua sponte* that Bray may have a viable claim for ineffective assistance of counsel based on her counsel's failure to inform her of the potential complicity conviction. Instead of ruling on this issue, the court suggested that Bray seek a post-conviction proceeding. Bray never filed for a post-conviction proceeding, and instead appealed the case, with a new claim to the Supreme Court of Ohio for ineffective assistance of counsel, based on her counsel's failure to inform her of the potential complicity conviction. The court denied Bray's motion and dismissed the case.

Bray appealed her Sixth Amendment claim to this court, which referred the case to Magistrate Judge Perelman for a Report and Recommendation ("R&R"). The R&R stated that Bray had procedurally defaulted her claims and had not exhausted her state options. As a result, the R&R stated, the federal courts could not hear the case. Magistrate Perelman only assigned one line to the

merits of Bray's Sixth Amendment claim, stating that, "[p]rocedural default aside, this claim would fail on the merits." R&R at 6.  The R&R urged this court to dismiss Bray's habeas petition without further proceedings.

Bray timely filed two objections to the R&R.  This court reviews Bray's objections de novo. Fed R. Civ. P. 72(3).

## II.   ANALYSIS

### A.   First Objection: Petitioner Bray Objects to the R&R's Findings, Conclusions, and Recommendation that her Ground for Relief has not been Exhausted by Ohio Courts and Also is Procedurally Defaulted

1. Exhaustion

A federal court may only grant a petition for writ of habeas corpus if "it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  This requirement "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Respondent argues that Bray failed to exhaust her state remedies because she did not apply for post-conviction relief. Respondent's Response to Petitioner's Objections to the Report and Recommendation at 3, *Bray v. Andrews*, No. 07CV0016 (N.D.Ohio Jan. 16, 2008) ("The state court of appeals gave Bray a roadmap to the proper forum and she failed to follow it.").  Therefore, respondent argues that Bray is now barred from federal courts, because the state courts did not have a "full and fair opportunity to resolve . . . those claims." *O'Sullivan*, 526 U.S. at 845.

The exhaustion requirement provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of

the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The Supreme Court clarified this standard in *O'Sullivan* when it explained that "[a]lthough this language could be read to effectively foreclose habeas review by requiring a state prisoner to invoke any possible avenue of state court review, we have never interpreted the exhaustion requirement in such a restrictive fashion." *O'Sullivan,* 526 U.S. 838 at 844. Instead, the court concluded, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845.

To fulfill the exhaustion standard, the appellant must invoke and exhaust "Ohio's standard, established appellate review process," which need not include a "collateral motion as suggested by the intermediate appellate court." *Clinkscale v. Carter*, 375 F.3d 430, 438 (6th Cir. 2004). Instead, "the exhaustion requirement is satisfied when the highest court in the state . . . has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). Further, the exhaustion requirement is satisfied "if the highest state court exercises discretion not to review the case." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d,* § 4264.1, pp 243 (2002).

As the Sixth Circuit held in *Clinkscale,* the failure to file for post-conviction relief is of no consequence to the exhaustion analysis. *Clinkscale*, 375 F.3d at 438. Indeed the court, in *Clinkscale*, stated that "to impose such an onerous and unjustified burden upon a petitioner in the absence of any explicit authority . . . would be imprudent, unwarranted, and manifestly unfair." *Id.*

Second, a petitioner must have fairly and fully presented the substance of his federal constitutional claims to the state courts. *Clinkscale*, 375 F.3d at 437. The Sixth Circuit explained that four actions by the petitioner determine whether he fairly presented the claim. *Newton v.*

-5-

*Millon*, 349 F.3d 873, 877 (6th. Cir. 2003). "1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Id.*

In this case, Bray presented the legal and factual bases of her ineffective assistance claim to the Ohio courts. Bray's brief to the Ohio Supreme Court presents the claim as follows:

> The Sixth Amendment to the Constitution guarantees an accused the right to the effective assistance of counsel.... Sabrina Bray rejected a favorable plea agreement because her trial counsel failed to provide her with competent advice Counsel neglected to inform her that, if she went to trial, she could be convicted of complicity to murder, even if she were found not guilty of committing the murder herself.

Memorandum in Support of Jurisdiction of Appellant Sabrina Bray at 1- 2, *State v. Bray*, 106 Ohio St.3d 1534 (Ohio 2005).

Further, Bray cites *Strickland v. Washington*, 466 U.S. 668 (1984) as controlling precedent. Accordingly, by relying on federal cases that employ constitutional analysis and phrasing her claim in terms of constitutional law, Bray fully and fairly presented her claims to the Ohio Supreme Court.

Accordingly, by giving the Ohio Supreme Court a full and fair opportunity to hear her ineffective assistance of counsel claim, Bray exhausted her state options. *Newton*, 349 F.3d at 877.

2. Procedural Default

Related to, but not synonymous with, the exhaustion doctrine, is the procedural default rule. The procedural default doctrine states that "a federal court is generally barred from considering an issue of federal law arising from the judgement of a state court if the state judgement 'rests on a state-law ground that is both 'independent of the merits of the federal claim' and an 'adequate' basis for the [state] court's decision." *Clinkscale*, 375 F.3d at 440 (citations omitted).

The Sixth Circuit applies a four-part test to determine when a habeas corpus claim has been

procedurally defaulted.

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim . . . Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986) (citations omitted).

According to the procedural default doctrine, "when a prisoner has defaulted a claim by violating a state procedural rule ... he may not raise the claim in federal habeas..." BRIAN R. MEANS, FED. HABEAS MANUEL, A GUIDE TO FED. HABEAS CORPUS LITIG., 556 (West 2008).

In the present case, respondent argues that Bray's failure to file a post-conviction petition "resulted in a procedural default." Brief of Respondent, . at 6. The R&R makes a similar finding, stating that "it was [the] failure to reach the merits *and subsequent failure to file a post-conviction petition* that [caused] the claim to be procedurally defaulted in these proceedings." R&R at 7 (emphasis added).

For this analysis, the Sixth Circuit's decision in *Clinkscale* is analogous to the present case. There, the petitioner appealed several felony convictions by alleging that his counsel had been ineffective and in violation of his Sixth Amendment rights. *Clinkscale,* 375 F.3d at 435. The Ohio court of appeals declined to rule on Clinkscale's Sixth Amendment claim and instead, suggested that he file a motion for post-petition relief. *Id.* Clinkscale instead appealed directly to the Ohio Supreme Court, which dismissed his appeal. *Id.* When he appealed to the federal court, the state opposed the motion, and argued, among other things, that Clinkscale had procedurally defaulted his

claim by not filing for postconviction relief. *Id*.

Applying the *Maupin* factors, the Sixth Circuit refuted the state's assertions, finding that the state court's refusal was merely a "preference that the claim be raise in a post-conviction motion" and not because of Clinkscale's "failure to comply with a procedural rule." *Id*. at 441. The court stated that any analysis of "a post-conviction motion . . . *was entirely unnecessary for purposes of preserving federal court review*, and is irrelevant to our analysis of procedural default." *Id*. at 441 (emphasis added). As a result, "not even the first *Maupin* procedural factor [was] satisfied." *Id*.

In the present case, the court of appeals similarly indicated that it was its preference, and not Bray's failure to comply with a procedural rule, that led it to recommend post-conviction relief. The court stated that because "it appears that any such evidence [to substantiate Bray's Sixth Amendment claim] would exist only outside of *the record*, we cannot say that Bray was prejudiced by counsel's failure to inform her of the . . . complicity charges. *Given the record*, this argument is more appropriate for post-conviction proceedings." *State v. Bray*, 2005 Ohio 2117 at ¶44 (Ohio Ct. App. 2005) (emphasis added). Put another way, the defining factor for the state appellate court was the absence of the record, not Bray's violation of a procedural rule. Accordingly, as in *Clinkscale*, "not even the first *Maupin* factor [is] satisfied." *Clinkscale*, 375 F.3d at 437.

Alternatively, if the analysis could proceed past the first *Maupin* factor, it would surely stop at the second -- whether the Ohio Supreme Court enforced the sanction for failure to comply with a procedural rule.[1] To fulfill this factor, the state court must "clearly and expressly state[ ] that its

---

[1] While Bray did in fact allege to the Seventh District Court of Appeals, as well as to the Ohio Supreme Court, that she received ineffective assistance of counsel, the basis for her claim did not remain constant. In her brief to the state court of appeals, Bray claimed that she received ineffective assistance of counsel *due to her attorney's failure to request a bill of particulars*. When Bray appealed to the Ohio Supreme Court she added a new claim, and alleged that she received ineffective assistance of counsel as a result of her attorney's failure to inform her of the possible charges that she faced, and that such failure deprived her of the chance to make an informed decision regarding the plea bargain. Thus, Bray did not allege the same factual and legal basis for her appeals.

judgment rest[ed] on a state procedural ground." *Harris v. Reed*, 489 U.S. 255, 263 (1989). Here, the Ohio Supreme Court denied Bray leave to appeal and dismissed the appeal as not involving any substantial constitutional question, without issuing any opinion. *State v. Bray*, 106 Ohio St.3d 1534 (Ohio 2005). Neither the Ohio court of appeals nor the Ohio Supreme Court "clearly and expressly states that its judgment rests on a state procedural bar." *Harris*, 489 U.S. at 263.

Accordingly, the analysis also fails on the second *Maupin* factor and for these reasons, this court holds that Bray is not procedurally barred from her ineffective assistance of counsel claim. This court now turns to the merits of that claim.

> **B.      Objection Two: Petitioner Bray Objects to the Magistrate Judge's application of the "unreasonable application" and "contrary to" analyses provided under 28 U.S.C. 2254(d).**

Bray filed her habeas corpus petition after the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA) 28 U.S.C.§ 2254. AEDPA provides, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits* in State Court proceedings unless the adjudication of the claim(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d) (emphasis added).

By passing AEDPA, Congress placed "reasonable state court judgements beyond the scope of federal review." *Herbert v. Billy*, 160 F. 3d 1131, 1135 (6th Cir. 1998). Thus, a federal court, applying AEDPA, may only issue a writ of habeas if the state court's application of federal law was

---

While this may be a violation of Ohio procedure, such a violation is only relevant if the Ohio courts enforced a sanction for violating a rule. Neither the Courts, nor the Respondent, nor the Report and Recommendation argue that the Court sanctioned Bray for violating a procedural rule.

unreasonable. *Williams v. Taylor*, 529 U.S. 403, 411 (2000).

However, before applying the AEDPA standard, this court must decide if the statute is applicable at all. The Sixth Circuit stated that where "the state court did not assess the merits of a claim properly raised in a habeas petition . . . AEDPA does not apply." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (citation omitted). Thus, only if the state court adjudicated the claim on its merits, should the federal court apply the AEDPA standard.

Complexity quickly arises here as, if the state court adjudicates the *claim* but not the *issue*- i.e. "simply holding that [an] error [was] . . . harmless... with little or no analysis"- then the court should apply a "modified AEDPA deference." *Vasquez v. Jones*, 496 F.3d 564, 569 (6th Cir., 2007). Under this standard, the court should conduct a "'careful' and 'independent' review of the record and independent law, and reverse only if "the state court's decision is contrary to or an unreasonable application of federal law.'" *Id.* at 570 (quoting *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005)).

If no state court adjudicated the petitioner's claim on the merits, it would be appropriate for *de novo* review. *Mckenzie v. Smith*, 326 F.3d 721, 727 (6th Cir., 2003) (quoting *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002) ("[If] deference to the state court is inapplicable. . . " the federal court should "exercise [its] independent judgment and review the claim de novo.")). Bray essentially argues that neither the issue nor the claim was adjudicated, stating that "...[because] the state court did not address [the claim] on its merits, the ineffective assistance of trial counsel claim must be reviewed de novo." Sabrina Bray's Objections to the Report and Recommended Decision of the Magistrate Judge at 9, *Bray v. Andrews,* No. 07-CV0016 (N.D.Ohio Dec. 28, 2007).

Stated plainly, the court has three alternatives. It could: 1) apply the deferential AEDPA

standard if the state court fully analyzed on the claim on the merits; 2) apply a modified AEDPA standard if the state court adjudicated the claim, but not the issue, with little or no analysis; or 3) analyze the claim *de novo* if neither state court adjudicated the claim.

In the present case, the first option can quickly be disposed of. Neither the Ohio court of appeals nor the Ohio Supreme Court fully analyzed the claim upon the merits. To do so, the state courts would have had to apply the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Wiggins v. State*, 539 U.S. 510 (2003). *See also Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003) (reviewing a claim for ineffective assistance of counsel *de novo* after finding that the state courts had not fully applied the *Strickland* test).

The *Strickland* test has two prongs. First, the "petitioner [must show] that the performance of counsel fell "'below an objective standard of reasonableness.'" *Id.* at 688 (internal citations omitted). Second, the petitioner must show "that there is a reasonable probability that, but for [the] errors, the result of the proceeding would have been different." *Id.* at 694. When the state courts do not apply either prong, a federal court's review "is not circumscribed by a state court conclusion . . ." *Wiggins,* 123 S.Ct. at 254.

Here, neither the appellate court in its decision, nor the Ohio Supreme Court in its denial, engaged either prong of this analysis. Thus, since Bray's claim was never fully adjudicated, this court should not apply the AEDPA standard.

Similarly, the facts do not justify the *modified* AEDPA standard. Courts apply a modified standard if the state court ruled on "... the claim, but with little analysis on the substantive constitutional issue." *Vasquez,* 496 F.3d at 569. In the present case, neither court ruled on Bray's claim. The court of appeals ruled on a separate claim, with a different factual and legal basis than

-11-

is presently before this court.² Thus, when the court of appeals stated that the "assignment of error is... meritless..." the court was referring to a different claim than Bray now raises. *State v. Bray*, 2005 Ohio 2117 at ¶44 (Ohio Ct. App., 2005).

The state courts did not rule on the claim that Bray now presents to this court. Therefore, the modified AEDPA standard of review is inapplicable.

The only option that remains is to review the claim *de novo*.

Accordingly, this court accepts Bray's second objection, rejects the Magistrate's recommendations and agrees that a de novo standard of review is appropriate. This court now proceeds to review the claim de novo.

### C. Ineffective Assistance of Counsel

In order to succeed on a claim of ineffective assistance of counsel, Bray must pass the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, she must show that her counsel's performance fell below a reasonable standard under "prevailing professional norms" making it constitutionally deficient. *Id.* at 687-88; *Wiggins*, 123 S. Ct at 2530. To do so, Bray must overcome the presumption that the challenged action was "sound strategy." *Strickland,* U.S. 668 at 689. Second, Bray must demonstrate that there was a reasonable probability that she was prejudiced by her counsel's errors. *Strickland,* 466 U.S. at 687. A reasonable probability necessitates only a "probability sufficient to undermine confidence in the outcome." *U.S. v. Day*, 969 F.2d 39, 45 n.8 (3rd Cir. 1992); *Strickland,* 466 U.S. at 694.

The Sixth Circuit holds that a petitioner can make a viable Sixth Amendment Claim if his counsel encouraged him to "reject a plea bargain and go to trial..." by proving that his counsel's

---

²Through no fault of the Ohio Appellate Court since Bray never presented it with the current claim.

performance was deficient and that, but for the counsel's error, "there is a reasonable probability that he would have pled guilty." *Magana v. Hofbauer*, 263 F.3d 542 (6th Cir. 2001) (internal citation omitted), *vacated on other grounds,* 492 U.S. 902 (1989), *reinstated on other grounds*, 940 F.2d 1000, 1002 (6th Cir. 1991).

First, the court determines whether Bray's counsel's performance fell below professional norms. This court finds that it did. While there is a presumption that an attorney's action is "sound strategy", there exists no strategic reason for failing to provide a client accurate information regarding a plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Where, as here, a defendant "is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases." *Id.* (internal citation omitted).

Bray's counsel admitted his error in open court during the sentencing hearing, stating that:

> Nothing in this case... led me to believe that the State was going to try to seek a complicitor instruction... *Had I known or even suspected that that was going to be an option*, I would have advised Sabrina to seriously consider and, in fact take the proposed plea agreement."

*State v. Bray*, 2005 Ohio 2117 at ¶35 (Ct. App. Ohio 2005) (emphasis added).

The Supreme Court stated that a plea must "[represent] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *N. Carolina v. Alford*, 400 U.S. 25, 31 (1970). If one or more of the options is not presented to the defendant, how could she make a voluntary and intelligent choice? Such conduct is surely outside the "range of competence demanded by attorneys in criminal cases." *Hill*, 474 U.S. at 58. A statement by counsel, in which he admits that he made a serious error, overcomes the presumption that his action was sound strategy. Accordingly, the first prong of *Strickland* is satisfied.

Second, the court determines whether Bray was prejudiced by her counsel's failure. This inquiry must find that, had Bray been properly advised about the possibility of a complicity charge, there is a reasonable probability that Bray would have accepted the plea deal.

As is common with cases that turn on the motivations of the defendant, the "amount of objective evidence [is]... sparse." *Lewandowski v. Makel*, 949 F.2d 884 (6th Cir. 1991). Indeed, this was the main reservation of the appellate court, as it noted that it did "not have any evidence of record to substantiate Bray's allegations." *State v. Bray*, 2005 Ohio 2117 at ¶44 (Ct. App. Ohio 2005). Aside from the statement made by Bray's counsel, the only evidence that Bray offered to support this prong is her own statement, in which she said:

> I didn't know. I just – I don't understand how I got convicted on complicity because I didn't know that they would get me for complicity, because if I would have known that, I would have never brought it to trial. I thought that I was on trial for just murder, and I still don't understand how this complicity part came up about it at all. And I am not the one that killed the girl. But I was there, but that was out of my control.... And I just don't understand none of this at all. I don't understand the guilty verdict. I don't understand the complicity. I just – I don't understand none of it.

*State v. Bray,* 2005 Ohio 2117 at ¶38 (Ct. App. Ohio 2005).

This court must take into effect that Bray's testimony occurred at sentencing- after a jury found her guilty. Absent other objective evidence in the record, subjective and self-serving testimony is typically insufficient to satisfy the *Strickland* requirement for prejudice. *Turner*, 858 F.2d at 1206, *Magana* 263 F.3d at 547, n.1. Such testimony does not exist in a vacuum. It is not irrelevant. However, it is not, by itself, enough.[3]

---

[3]While it is obviously impossible to see what Bray was thinking, there likely exists evidence in the record that suggests whether Bray understood the charges against her. To provide one example, if, during testimony, Bray, or any other defense witness, effectively admitted the prima facie case of complicity, such an admission would support the conclusion that Bray did not understand that she could be convicted of the crime she was admitting to.

Indeed, respondent raises this very point, by asking the following questions:

Among the things that cannot be determined from the record as it stands: What did Bray and her attorney discuss prior to the plea negotiations? Did they discuss the possibility of a complicity charge at all? Was her attorney actually aware of the possibility of a complicity jury charge? Did her attorney inform her of the possibility but incorrectly guess that the prosecutor would not pursue it? At what point did her attorney become aware of the complicity charge? Before the trial, during the trial, or only once the jury was instructed? Would Bray have pleaded guilty if she had known about the possibility of complicity?

Respondent's Answer/Return of Writ at 11-13, *Bray v. Andrews*, No. 04-CV0016, (N.D.Ohio 2007).

Fortunately, the Sixth Circuit provides some guidance on this matter in *Magana v. Hofbauer*, 263 F.3d 542, 552 (6th Cir. 2001). There, the court considered two objective factors "in addition to the defendant's own declarations" to analyze whether the plaintiff would have accepted a plea had his counsel provided him with accurate information. *Id.* First, the court noted that there was a large discrepancy between the prison sentence offered in the plea and "that which he received." *Magana*, 263 F.3d at 552. The court stated that "it does not strain reason to believe that Magana would have chosen a flat ten-year sentence instead of risking a possible forty-year term." *Id.* Second, the court examined Magana's reaction to the plea offer, as reported by his attorney. Magana's counsel reported that Magana had stated that "...*under those* [misstated] *circumstances,* he would go to trial." *Id.* Taking these factors together, the court found that there was a reasonable probability that Magana was prejudiced by his counsel's error.

Applying the *Magana* factors here, this court reaches a similar result. First, the court compares the discrepancy between the plea offered and the jail sentence the plaintiff received. *Magana*, 263 F.3d at 552. Bray rejected a plea that would have given her a maximum sentence of thirteen years. Instead, she received a maximum life sentence. As in *Magana*, "it does not strain reason to believe" that Bray would have chosen a flat thirteen-year sentence instead of risking a

-15-

possible life term.  *Magana*, 263 F.3d at 552.   Accordingly, the first *Magana* factor is fulfilled.

Second, the court examines the record for indications that Bray relied on her attorney's bad advice.  Here, Bray's attorney stated:

> *So based on my discussions with her*, *she elected to proceed towards trial* on murder as the principal charge, which now in hindsight has the tragically pathetic effect of probably doubling her sentence.

*State v. Bray*,  2005 Ohio 2117 at ¶35 (Ct. App. Ohio 2005) (emphasis added).

Here, as in *Magana*, the counsel indicates  that Bray relied on her attorney's advice as a guide to formulate her decisions regarding her plea. This is synonymous with the petitioner in *Magana* stating "... under those circumstance, he would go to trial." *Magana*, 263 F.3d at 552. Accordingly, the second Magana factor is fulfilled.

This court finds that there is enough objective evidence in the record to supplement Bray's testimony to establish that there was a "reasonable probability" that Bray was prejudiced by her counsel's deficient performance.

Accordingly, as Bray satisfies both prongs of the *Strickland* test, this court finds that Bray's Sixth Amendment rights were violated when her counsel failed to inform her that she could be convicted as a complicitor to murder.

**D.     Remedy**

A remedy for a Sixth Amendment violation "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Turner,* 858 F.2d at 1207 (citation omitted).  In *Magana*, the Sixth Circuit noted that a remedy for a Sixth Amendment violation should "neutralize" the constitutional deprivation suffered by the defendant." *Magana*, 263 F.3d at 553.  Here, as in *Turner* and *Magana*, the Sixth Amendment violation was the result of a constitutionally deficient counsel during plea consideration.  Therefore, the court follows the remedies applied in these cases.

In *Magana,* the Sixth Circuit granted the petition for habeas corpus, but warned the state that "any plea in excess of the original offer must overcome a rebuttable presumption of prosecutorial vindictiveness." *Magana*, 263 F.3d at 553 (internal citation omitted).  If the state presented an offer in excess of the original plea, a presumption of vindictiveness would attach to its offer and the district court had to determine whether the state could meet its burden.  *Id*.  If the prosecution could not, the court would grant the petition for habeas corpus outright.  *Id*.

Accordingly, this court grants Bray's petition, conditional upon a new plea hearing in state court within sixty days where Bray will have the opportunity to consider, with counsel, a new plea offer. *Id.*  If the state offers Bray a plea in excess of thirteen years (the original offer) this court will decide whether the state can rebut a presumption of vindictiveness. *Id.*  If the state can meet its burden, then the parties are free to negotiate a new plea. *Id.*  If the state cannot overcome the presumption, and it refuses to reinstate its original offer, the writ will be granted outright. *Id.*

IT IS SO ORDERED.

    /s/*Ann Aldrich*
ANN ALDRICH
UNITED STATES DISTRICT JUDGE
**Dated:** August 13, 2009